IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Keresa Richardson, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. _____ |
| | § | |
| THE STATE OF TEXAS; | § | |
| GREG ABBOTT, Governor of | § | |
| Texas in his official capacity, | § | |
| Defendant. | § | |

## COMPLAINT

At its core, this case presents two questions. The first is purely legal: do either the United States or Texas Constitutions protect the rights of Texas voters to equal protection in the election of their appellate justices? Assuming an affirmative answer to the first, the second question is purely arithmetic: how should Texas Appellate districts be populated so that each voter is provided a nearly equal apportioned weight in the election process for Texas appellate justices?  Additionally, Plaintiff asserts that her right to participate in the election of Justices in the presently-constituted Fifth Court of Appeals has been unlawfully abridged in that her vote has been diluted in violation of section 2 of the federal voting rights act. 42 U,S.C.§ 1973. Because this latter question

*COMPLAINT, page 1*

may entail more comprehensive factual development that may be wholly avoided and rendered moot by resolution of her equal protection claim, Plaintiff will urge resolution of the purely legal equal-protection issue first.

## PARTIES

1.      Plaintiff Keresa Richardson is a citizen of Collin County, Texas and Texas registered voter. Collin County is part of the Eastern District of Texas federal court system.

2.      The State of Texas is a party by virtue of its legislature.

3.      Defendant Greg Abbott is the duly elected governor of the State of Texas and is being sued in his official capacity only. He may be served with process by delivering this Complaint to the following address:

Hon. Greg Abbott
Governor, State of Texas
c/o Texas Attorney General Ken Paxton
300 W. 15th Street
Austin, Texas 78701

*COMPLAINT, page 2*

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court in accordance with 28 U.S.C. §1331 (federal question) and 52 U.S.C. §10101(d).

5.      Venue is proper in this district because the Plaintiff resides in this district and every district in Texas has an equal claim to venue. 28 U.S.C. §1391.

## STATEMENT OF FACTS

*Makeup of Texas's Appellate Court System*

6.      Texas state Courts of Appeals are the intermediate appellate courts between Texas trial courts and the two highest courts in Texas: the Texas Supreme Court and the Texas Court of Criminal Appeals.

7.      The state's appellate courts exploded in number over the course of the preceding decades – growing from 5 courts/districts in 1893 to 14 courts/districts by 1963 — more than double the number of like courts in any other state.

8.     Texas's appellate courts consist of 14 mostly-separate districts. Each district has jurisdiction over multiple, assigned Texas counties.

9.     Texas appellate justices serve six-year terms.

Texas's official 2020 census population is 29,145,505.

10.     Texas has chosen popular-vote, partisan elections for its appellate judiciary. The 14 intermediate appellate courts together have 80 justices serving in total. Assuming the federal and state constitutional mandate of equal protection is applicable to these elections, as Plaintiff urges, the constitutional ideal of equality of apportioned representation would thus reflect 364,432 citizens per elected appellate justice (29,145,505 divided by 80).

11.     Some Texas counties (e.g., Hunt County), are part of two different appellate districts known as "floterial districts." Hunt County voters presently participate in electing the justices in both the 5th (13 justices) and the 6th (3 justices) Judicial Appellate Districts. Voters in Hunt County are thus afforded grossly disproportionate influence on the composition of the overall state judiciary.  Those voters are further afforded the opportunity to

*COMPLAINT, page 4*

select the court to which they appeal in any matter in which they find themselves in need of pursuing an appeal in the state court system.

12.     Some districts overlap counties (e.g., the Texas 1st and 14th Districts overlap Harris County) while others are comprised of unique counties only served by that particular appellate district.

13.     All Texas appellate districts have appellate courts comprising varying numbers of justices. For instance, the Texas 6th District has only three justices whereas the Texas 5th District has 13 justices.

*The Equal Protection Rights of Voters, Including Plaintiff, Have Been Adversely Impacted*

14.     As areas served by three-justice appellate courts have proportionately lost population, and despite the state and federal constitutional assurance of equal protection, the Legislature has made no effort to assure an equal voice among the voters who use the state's appellate courts.  Instead, it has authorized cases and controversies (work from the justice's perspective and life-altering matters from the voters) to be reassigned from the busier courts to the less busy courts in a manner colloquially referred to as "docket balancing." TEX. GOV'T CODE §74.022.  While this practice assists in

*COMPLAINT, page 5*

promoting convenience among the state's elected officeholders, it results in the complete disenfranchisement of all of those voters who find themselves in the state courts and subject to a transfer to a court populated by officeholders they had no ability to elect.

15.     A five percent malapportionment, if accepted as a maximum to be suffered under the Texas Constitution, would permit no fewer than 346,103 constituents per elected justice. The ten percent maximum acceptable under the federal equal protection standard would permit no fewer than 327,887.  A Justice on the Sixth District in Texarkana is currently serving 265,648 citizens on average, including many constituents presently residing in others districts,[1] nearly 28% below the population expected if the constitution's equal protection clause applies to contested partisan judicial elections.

*Applicable Legal Issues*

---

[1]     Voters in Wood, Upshur, Rusk, and Gregg counties reside and participate in the election of Justices in the Sixth District and the Twelfth District Court of Appeals in Tyler.  Despite the effort to assign population and workload to justify the maintenance of a separate court, the current Sixth court is still underpopulated for constitutional purposes *even with these additional overlapping counties.*  It is also still underworked, taking on work from other districts via docket balancing/transfer. This results in multiple injuries to the voter-litigants who suffer not only a reduced voting strength within their own jurisdiction as to who serves on those courts, but the looming prospect of complete disenfranchisement when their vote means most to them.

*COMPLAINT, page 6*

16.     Texas law confers essentially limitless discretion on the Texas Legislature to configure the state's appellate courts as it sees fit, and since at least 1987, has affirmatively directed that it take input and consider, among other things, "consolidating, eliminating *or reallocating* existing appellate courts." TEX. GOV'T CODE §74.022. The timing of this lawsuit coincides with the admonition found in TEX. GOV'T CODE §74.022(c).

17.     While the Legislature is free to reconfigure its electoral districts at any time and has dutifully and promptly done so with respect to its own legislative districts and the state board of education after receipt of every ten-year census, it has declined to take any material steps to realign the appellate courts since the 1960s.  Since the United States and Texas Constitutions embrace the right to equal protection in judicial elections (Plaintiff urges that *both* do), this inaction by the Texas legislature compels the courts to fashion a remedial plan without delay.

18.     The Texas Constitution directly embraces the "one-man, one-vote" norm recognized in *Reynolds v. Sims,* 377 U.S. 533 (1964) and *Baker v. Carr,* 377 U.S. 573 (1962). No decision, and no plausible

*COMPLAINT, page 7*

reading of the Texas Constitution, would support the view that voters in judicial elections are to be denied their right to equally participate with approximately equal influence afforded each voter.[2] Indeed, *Chisom v Roemer,* 501 U.S. 380 (1991) holds that voters in judicial elections are entitled under Section 2 of the Voting Rights Act – which was enacted to provide protection greater than that found in the Constitution's 15th Amendment – to exactly the same equal protection protecting against voter dilution as they are in legislative or executive elections.[3]

19.     Where the state fails to apportion its districts in keeping with that constitutional command [of equal protection], it "falls to the courts – first to the Texas courts and then to those of the United States" to draw a constitutional, remedial plan.  *Perry v. Del Rio,*

---

[2]     There do not appear to be any Texas appellate cases in which the issue of Texas constitutional protections have been evaluated as they relate to judicial elections. However, even if the U.S. Constitution does not provide relief in this case, the Texas Constitution is frequently construed to provide broader protection of the rights of Texas citizens than does the federal Constitution. *See, e.g., Davenport v. Garcia*, 834 S.W.2d 4, 11-42 (Tex.1992) (discussing literally dozens of cases in which the Texas Constitution has been construed to secure rights broader and deeper than those afforded by the federal Constitution).

[3]     In *Wells v. Edwards*, 409 U.S. 1095 (1973), the Supreme Court, without opinion, summarily affirmed a district court decision (347 F. Supp. 453 (M. D. La. 1972) that held the Constitutional "one man-one vote" protections found in the 14th Amendment do not apply to judicial elections. However, other reasoned decisions, including *Haley v. Junior College District*, 397 U.S. 50 (1970), arguments found in the trenchant dissent in the *Wells* decision itself, and subsequent analysis of what the term "representative" means in cases such as *Chisom* (despite its 'limited character'), cast quite a bit of doubt on the actual efficacy of the *Wells* ruling.  As Wells's "summary affirmance is an affirmance of the judgment only" a district court would "err[] in believing that [such an] affirmance . . . adopted the reasoning as well."  *Mandel v. Bradley,* 432 U.S. 173, 176 (1977).  As *Chisom* has since made clear, judges selected by popular ballot and on a partisan basis are undeniably representatives for purposes of the voter's right to equal protection in participating in those elections.

*COMPLAINT, page 8*

66 S.W.3d 239, 243 (Tex. 2001); *Perry v. Perez,* 565 U.S. 388, 391 (2012) (where, following census, the state legislature fails to draw districts compliant with constitutional requirement of equal representation, the "unwelcome obligation" to do so falls to the courts).

20.      Assuming the voters in these elections are entitled to equal protection under the Texas Constitution or the federal Constitution in a manner at least approximating the assurance guaranteed to voters in all other elections under the federal and other state constitutions, their votes cannot lawfully be disproportionate across districts in violation of the one-person, one-vote doctrine.

*Correct Apportionment*

21.      The U.S. Supreme Court—interpreting the federal constitution at a time before ready access to advanced computer technology—accepted that deviations from the ideal, not to exceed a maximum of 10%, may be permissible to the extent they are the legitimate product of other traditional districting principles.

22.      In recognition of more advanced technology and in view of the constitutional provisions applicable to the U.S. House of

*COMPLAINT, page 9*

Representatives, the Supreme Court has held that no deviation is permissible in that setting. While these standards are not controlling of the analysis under the Texas Constitution, they do inform its construction and generally provide a *minimum* level of protection. *Caleb v. Carranza,* 518 S.W.3d 537, 543 (Tex. App.— Houston [1st Dist. 2017, no pet.) (citing *Klumb v. Municipal Employees Pension Sys.,* 458 S.W.3d 1, 13 n.8 (Tex. 2015)).

23.     Because the Texas Legislature has declined to redraw the courts' boundaries so that each voter has a proportionally-equal impact on the election of appellate justices or can rest assured that his appeal will be heard by officials he or she has had a voice in selecting, and because the existing boundaries result in gross malapportionment among the courts, it becomes the "unwelcome obligation" of this Court to draw a remedial plan to redress Plaintiff's equal protection injury.

24.     In order to expedite matters and specifically to permit review in the Supreme Court in time to avoid disruption in the 2024 election, Plaintiff has proposed a constitutional remedial plan to redress his injury and to encompass the remainder of the state's

courts.  *See attached* **Exhibit A**. Adoption of this or some other alternate plan in addition to a ruling on the controlling legal issue would avoid the need for any remand and the unnecessary development of Plaintiff's section 2 claim and would permit the Supreme Court to conduct a prompt review should any such review be sought and to issue a timely decision in advance of the filing deadline for the 2024 general election.

## CAUSES OF ACTION

25.     All facts set out above and in **Exhibit A** are incorporated into each cause of action below as if fully set forth therein.

*Violation of the Equal Protection Guarantee*

26.     The disproportion in voting strengths found among Texas voters regarding the Texas appellate courts violates the United States and Texas Constitution's assurance of equal protection.

27.     The remedy to alleviate this disparate treatment is a long-overdue reapportionment (sometimes referred to as redistricting) of Texas's appellate districts so that voters in each district have a similar power in electing the officials who sit on those courts.

Because the Texas legislature has failed and refused to correct this problem despite massive population shifts, despite having authorized and observed ever-increasing reassignment of cases, and despite explicit, prior legislative directives to consider the issue, under the equal protection guarantee owing to Texas citizens this Court must do so at the command of the equal protection guarantee owing to all Texas citizens.

28.     Plaintiff is ready and willing to present a proposal to the Court that will reallocate the Texas appellate district courts and thereby alleviate the illegal disproportionate impact affecting Texas voters, which has the added benefit of alleviating much of the workload disparities found between and among the current appellate district and justices which the Texas legislature has chosen to address by "docket balancing." *See* **Exhibit A** attached.

29.     Plaintiff therefore prays that this Court enter an order directing the State of Texas to reapportion its appellate court districts accordingly.

*COMPLAINT, page 12*

*Violation of 42 U.S.C. §1983*

30.     Texas's current malapportionment of voting strength between and among Texas voters deprives many Texas voters, including Plaintiff, of their Constitutional rights to equal protection of the laws without due process as those rights are protected by the U.S. Constitution, Amendments 5 and 14, and thus Texas is violating 42 U.S.C. §1983.

31.     Plaintiff therefore seeks a decree correcting this illegal malapportionment as set forth herein.

32.     Plaintiff also seeks recovery of its reasonable attorney's fees in accordance with 42 U.S.C. §1988.

*Violation of the Texas Constitution*

33.     Texas, by its current malapportionment of voting strengths between and among Texas voters, is  depriving many Texas voters, including Plaintiff, of their Constitutional rights to equal protection of the laws, without due process, as those rights are protected by the Texas Constitution, Article 1, §3.

34.     Plaintiff therefore seeks a decree correcting the current illegal malapportionment as set forth herein.

*COMPLAINT, page 13*

*Violation of the federal Voting Rights Act*

35.    Plaintiff is a member of a distinct ethnic minority group within the current Fifth District Court of Appeals.  She alleges that the voting within that district, as has been shown across Texas, reflects cohesive, adverse, and polarized "bloc" voting among differing ethnic groups; that relatively have the effect of diluting her vote in violation of §2 of the Voting Rights Act, 52 U.S.C. §10101.

36.    Plaintiff urges further that contiguous, relatively compact districts could be drawn in which this illegal dilution would be remediated, and that other relevant factors applicable to her claim would support relief.  She stands ready to offer such a plan as to the area in and around the current Fifth Court of Appeals or the entire state.  *See* **Exhibit A**.  Because development of this question may be fact intensive, Plaintiff will urge the court to abate its consideration of her §2 discrimination claim pending resolution of her Constitutional claim, leaving such time as is necessary and appropriate to resolve both issues in advance of the 2024 election.

## PRAYER

Plaintiff prays that Defendant be cited to appear and answer herein, and upon trial or other disposition of the case, the Court enter an order consistent with the equal protection guaranties of the U.S. and Texas Constitutions, affording Plaintiff injunctive and declaratory relief directing the State of Texas to reapportion and realign its appellate judicial districts in a manner that is both constitutional and in keeping with the Voting Rights Act, such as **Exhibit A**, and award Plaintiff her reasonable and necessary attorney's fees as the Court deems just and proper.

Plaintiff also seeks such other and further relief as is just.

Respectfully Submitted:

/s/ James A. Pikl
Texas Bar Number 16008850
jim.pikl@solidcounsel.com
Scheef & Stone, LLP
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100
Fax (214) 472-2150

**Attorneys for Plaintiff**