# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| KERESA RICHARDSON, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 4:22-cv-01041 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| THE STATE OF TEXAS, GREG | § | |
| ABBOTT, GOVERNOR OF TEXAS, in | § | |
| his official capacity, and JANE NELSON, | § | |
| in her official capacity, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended

Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (6) or, Alternatively, Abate

(Dkt. #15).  After reviewing the motion, the response, and the relevant pleadings the Court finds

that the motion should be **GRANTED**.

## BACKGROUND

This case involves a challenge to the apportionment of Texas's intermediate appellate

courts.  Plaintiff Keresa Richardson is a resident of Collin County, Texas and a registered voter

who alleges that the current apportionment of the state's appellate courts results in some voters

having an outsized influence on the composition of the judiciary (Dkt. #9 ¶¶ 1; 13–15).  To remedy

this alleged malapportionment, Plaintiff initiated this action against Defendants the State of Texas,

Governor Greg Abbott in his official capacity, and Secretary of State Jane Nelson, in her official

capacity (Dkt. #9 ¶¶ 3–4).

## I.  Factual Background

In 1891, the citizens of Texas voted to amend the state's constitution to create intermediate courts of civil appeals.  Hon. James T. Worthen, *The Organizational & Structural Development of Intermediate Appellate Courts in Texas, 1892-2003*, 46 S. Tex. L. Rev. 33, 35 (2004).  Within a year, the Texas legislature created the first three courts of appeals in Galveston, Fort Worth, and Austin.  *Id.*  As its population exploded over the twentieth century, Texas expanded and reformed its intermediate courts of appeals by establishing eleven additional courts, adding criminal appeals to their jurisdiction, and amending its constitution to allow for more than three justices to a court. *Id.* at 36–41.

The current composition of Texas's intermediate appellate courts is prescribed by statute. The state is presently divided into fourteen judicial districts with a court of appeals serving each district. Tex. Gov't Code Ann. § 22.201.[1]  The courts range in size from three justices in the smallest courts (the Sixth, Eighth, Tenth, Eleventh, and Twelfth Courts of Appeals) to thirteen justices in the largest court (the Fifth Court of Appeals).  Several of these judicial districts have overlapping jurisdiction over certain counties: the Fifth and Sixth Courts of Appeals have overlapping jurisdiction over appeals arising from Hunt County, and the Sixth and Twelfth Courts of Appeals have overlapping jurisdiction over appeals arising from Wood, Upshur, Gregg, and Rusk counties.  *Id.*

The process of redistricting and reapportioning the appellate courts falls primarily to the legislature and two related governmental bodies: the Texas Judicial Districts Board and the Texas

---

[1] In 2023, the legislature amended § 22.201 to create a fifteenth court of appeals.  *See* Tex. H.B. 3166, 88th Leg., R.S. (2023).  This amendment created the Fifteenth Judicial District, which encompasses the entire state, and the Fifteenth Court of Appeals, which has jurisdiction over cases brought against the state and various state agencies and officials. *Id.*  This new judicial district and court will officially come into existence on September 1, 2024.

Legislative Redistricting Board.  The Judicial Districts Board consists of the Chief Justice of the Supreme Court of Texas, who serves as the Board's chairman, the presiding judge of the Texas Court of Criminal Appeals, the presiding judge of each of the administrative judicial districts, the president of the Texas Judicial Council, and one Texas attorney who is appointed by the Governor and approved by the Senate for a term of four years.  TEX. CONST. ART. V, § 7(b).  It is responsible for reapportioning the judicial districts and advising the legislature on the need for additional judicial districts.  TEX. GOV'T CODE ANN. § 24.946.  Any reapportionment order proposed by the Judicial Districts Board must be adopted by a majority of both chambers of the Texas legislature before it becomes binding and effective.  TEX. CONST. ART. V, § 7(h).  After each federal decennial census, if the legislature and the Judicial Districts Board do not reapportion the judicial districts, responsibility for reapportionment falls to the Legislative Redistricting Board. *Id.* at § 7(e).  The Legislative Redistricting Board consists of the Lieutenant Governor, the Speaker of the House, the Attorney General, the Comptroller, and the Land Commissioner.  TEX. CONST. ART III, § 28.[2]  Critically, no statute requires the legislature to redistrict or reapportion the appellate districts at any given time.

In 2021, Governor Abbott called a third special session of the legislature to address issues relating to redistricting.  In that session, the legislature created redrawn maps for Texas's House, Senate, Congressional, and Board of Education districts.  *See* S.B. 4, 87th Leg., 3d Spec. Sess. (Tx. 2021); H.B. 1, 87th Leg., 3d Spec. Sess. (Tx. 2021); S.B. 6, 87th Leg., 3d Spec. Sess. (Tx. 2021); S.B. 7, 87th Leg., 3d Spec. Sess. (Tx. 2021).  It did not, however, create a redrawn map for the judicial districts.

---

[2] In addition, the legislature has tasked the Supreme Court of Texas with "assess[ing] the need for adding consolidating, eliminating, or reallocating existing appellate courts."  TEX. GOV'T CODE. ANN. § 74.022(a).

## II.    Procedural History

Dissatisfied with the legislature's inaction, Plaintiff initiated this case on December 12, 2022 (Dkt. #1).  On the same day, Plaintiff initiated a concurrent action in the 296th Judicial District Court in Collin County, Texas.  *See generally Keresa Richardson v. State of Texas et al.*, No. 296-06669-2022 (296th Dist. Ct., Collin County, Tex. Dec. 12, 2022).

Plaintiff is a white, non-Hispanic Republican voter who resides in Collin County, which is located in the Fifth Judicial District (Dkt. #9 ¶ 1).  According to Plaintiff, the judicial districts are "malapportioned" in their current form, and voters in less populous counties have a "grossly disproportionate influence" on the composition of the Texas judiciary (Dkt. #9 ¶ 13).  As evidence of this malapportionment, Plaintiff points to the fact that voters in neighboring Hunt County, which falls within the Fifth and Sixth Judicial Districts, are afforded the opportunity to vote for justices on both the Fifth Court of Appeals and the Sixth Court of Appeals (Dkt. #9 ¶ 13).

In an effort to remedy this alleged malapportionment, Plaintiff asserts four constitutional and statutory causes of action.  In Counts One through Three of her Amended Complaint, Plaintiff asserts claims under (1) the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments (Dkt. #9 ¶¶ 29–33), (2) 42 U.S.C. § 1983 (Dkt. #9 ¶¶ 34–36); and (3) Article 1, § 3 of the Texas Constitution (Dkt. #9 ¶¶ 37–38).  In addition, in Count Four, Plaintiff asserts a claim for violations of § 2 of the Voting Rights Act, 52 U.S.C. § 10101 (Dkt. #9 ¶¶ 39–40).  Ultimately, Plaintiff seeks an order directing the State of Texas to reapportion its intermediate appellate courts pursuant to a redistricting plan submitted by Plaintiff (Dkt. #9 at p. 16).

On February 14, 2023, Defendants moved to dismiss Plaintiffs claims, or, alternatively, to stay the case pending resolution of the concurrent state litigation (Dkt. #15).  Plaintiff responded on February 28, 2023 (Dkt. #19).  On March 7, 2023, Defendants filed their reply (Dkt. #21).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject-matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case.  FED. R. CIV. P. 12(b)(1).  If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts."  *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).  The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff.  *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).

Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject-matter jurisdiction.  *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  The Court will grant a motion to dismiss for lack of subject-matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief.  *Lane*, 529 F.3d at 557.

## ANALYSIS

Defendants seek to dismiss Plaintiff's claims on two principal grounds.  First, Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiff's claims (Dkt. #15 at p. 17). Second, Defendants argue that Plaintiff has failed to allege sufficient facts in support of her claims (Dkt. #15 at p. 24).  The Court agrees with Defendants that subject-matter jurisdiction is lacking here.  Because it lacks jurisdiction to hear Plaintiff's claims, the Court need not consider Defendants' second argument.

## I.    The Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Claims

Defendants argue that Eleventh Amendment sovereign immunity prevents the Court from hearing Counts One through Three of Plaintiff's First Amendment Complaint (Dkt. #15 at p. 17). More specifically, Defendants contend that Plaintiff's claims for violations of the Due Process and Equal Protect guarantees, § 1983, and Article 1, § 3 of the Texas Constitution are barred by sovereign immunity.[3]  In addition, Defendants argue that Plaintiff cannot carry her burden of establishing that she has standing to assert any of her claims—including her claim for violations of § 2 of the Voting Rights Act (Dkt. #15 at p. 22).

Plaintiff counters that the Eleventh Amendment presents no obstacle to her claims because "claims of constitutional and federal statutory violations by state officials . . . do not enjoy sovereign immunity" (Dkt. #5 at p. 18).[4]  Likewise, Plaintiff argues that she has standing to pursue her Voting

---

[3] Defendants do not argue that the sovereign immunity protection extends to Plaintiff's claim under the Voting Rights Act.  Nor could they, as there is no sovereign immunity with respect to Voting Rights Act claims.  *Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020) ("The [Voting Rights Act], which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity.").

[4] Plaintiff's response to Defendants' current motion to dismiss largely ignores Defendants' jurisdictional arguments (Dkt. #19).  The Fifth Circuit has indicated that a plaintiff's failure to respond to an argument raised in a defendant's motion to dismiss constitutes abandonment of the challenged claim.  *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).  That said, although it is far from model of clarity, Plaintiff's response to Defendants' motion to

Rights Act claim by virtue of her status as a voter in the Fifth Judicial District (Dkt. #19 at p. 26). The Court finds both of Defendants' arguments persuasive and concludes that it lacks subject-matter jurisdiction over Plaintiffs' claims because her constitutional claims are barred by the Eleventh Amendment and because she lacks standing to assert her Voting Rights Act claim.

### A.    Plaintiff's Constitutional Claims are Barred by the Eleventh Amendment

Eleventh Amendment sovereign immunity deprives federal courts of jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless the state has waived its sovereign immunity or Congress has abrogated it. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Plaintiff contends that this general rule does not apply when, as here, a plaintiff asserts "[c]laims of constitutional and federal statutory violations by state officials" (Dkt. #5 at p. 18). The Court finds this contention unavailing as it is contrary to blackletter law. In fact, in both cases that Plaintiff cites in support of this assertion, the Fifth Circuit affirmed the dismissal of claims alleging constitutional violations by a state and by state officials in their official capacity. *See Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020) (affirming dismissal of plaintiff's claims for constitutional violations by state officials on sovereign immunity grounds); *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 740–41 (5th Cir. 2020) (affirming dismissal of plaintiff's claims for state constitutional violations by state officials on sovereign immunity grounds).

### 1.    Sovereign Immunity Bars Each of Plaintiff's Constitutional Claims

Sovereign immunity bars each of Plaintiff's federal and state constitutional claims. As an initial matter, in Count One, Plaintiff alleges a standalone cause of action for violations of the Due Process and Equal Protection clauses (Dkt. #9 ¶¶ 29–33). Section 1983 provides the proper vehicle

---

dismiss appears to incorporate by reference arguments that she raised in response to Defendants' motion to dismiss her original complaint (Dkt. #19 at p. 27). The Court will consider Plaintiff's arguments in the interest of justice.

for asserting these claims.  *See, e.g.*, *Raj v. La. State Univ.*, 714 F.3d 322, 328 n.2 (5th Cir. 2013) (noting that § 1983 is the "vehicle under which" Due Process and Equal Protection claims are "properly brought").  For this reason, Plaintiff's standalone Equal Protection and Due Process claims are subject to the same sovereign immunity analysis as her Due Process and Equal Protection claims expressly brought under § 1983.  *Id.*

And it is well-established that § 1983 does not override or abrogate sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984); *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015).  Rather, it is because of Eleventh Amendment sovereign immunity that § 1983 claims may be asserted only against "persons," and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

Likewise, sovereign immunity bars Plaintiff's claim under the Texas Constitution. Sovereign immunity deprives federal courts of jurisdiction to hear state law claims brought in federal court against a state or a state official in their official capacity.  *Pennhurst*, 465 U.S. at 117; *Reeves*, 954 F.3d at 739.  And, while a state may waive its sovereign immunity, Texas has generally not waived its immunity for claims brought under the Texas Constitution.  *See, e.g.*, *Gautreaux v. Masters*, No. 1:21-CV-01166, 2022 WL 3723298, at *8 (W.D. Tex. Aug. 29, 2022); *Idoux v. Lamar Univ. Sys.*, 817 F. Supp. 637, 641 (E.D. Tex. 1993) (noting that the State of Texas has waived sovereign immunity only in the context of claims brought under Article I, § 17 of the Texas Constitution).

Thus, Plaintiff's constitutional claims are categorically barred by the Eleventh Amendment.

### 2.     *Ex parte Young* Does Not Apply Here

Plaintiff nonetheless urges the Court to permit her claims against Governor Abbott and Secretary Nelson in their official capacities to go forward under the *Ex parte Young* doctrine (Dkt. #5 at p. 19).

As an exception to the general rule of state sovereign immunity, *Ex parte Young* allows plaintiffs to sue a state officer in his official capacity for an injunction to stop ongoing violations of federal law.   209 U.S. 123, 155–56 (1908); *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022). Underpinning the *Ex parte Young* exception is the legal fiction that a state official is "not the State for sovereign immunity purposes when a federal court commands him to do nothing more than refrain from violating federal law." *Reeves*, 954 F.3d at 736 (cleaned up).  The officer sued "must have some connection with the enforcement of the challenged act." *Lewis*, 28 F.4th at 663 (quoting *Ex parte Young*, 209 U.S. at 157) (cleaned up).  Although this "connection" requirement has eluded a concrete definition, at least one rule is well-settled: "Where a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, [the] *Young* analysis ends." *Id.*; *City of Austin*, 943 F.3d at 998.   Applying these principles here, the Court concludes that Plaintiff's invocation of the *Ex parte Young* exception fails for two reasons.

To begin, *Ex parte Young* does not salvage Plaintiff's state constitutional claim.  *Ex parte Young* cannot be used to redress a state official's violation of state law. *Reeves*, 954 F.3d at 739 (citing *Pennhurst*, 465 U.S. at 92).  After all, such a result would "conflict directly with the principles of federalism that underlie the Eleventh Amendment." *Id.*

As for Plaintiff's § 1983 claim, *Ex parte Young* does not apply because Governor Abbott and Secretary Nelson do not have any connection to the challenged acts here. *See, e.g.*, *Lewis*, 28 F.4th

at 663.  Although she does not specifically identify the challenged statutes, Plaintiff seeks an order "reapportion[ing] and realign[ing]" Texas's appellate courts (Dkt. #9 at p. 16).  Texas has an "extensive" legislative scheme addressing the structure and composition of its intermediate appellate courts.  *See* 1 McDonald & Carlson Tex. Civ. Prac. § 3:3 (2d. ed. rev. 2022).  Absent in that legislative scheme is any provision that gives Governor Abbott or Secretary Nelson the authority to redistrict judicial districts.

Rather, the task of prescribing the number and composition of the various courts of appeals falls to the legislature.  *See* Tex. Gov't Code Ann. § 22.201.  Likewise, the task of "assess[ing] the need for adding consolidating, eliminating, or reallocating existing appellate courts" falls to the Supreme Court of Texas.  Tex. Gov't Code. Ann. § 74.022(a).  And the task of actually reapportioning or realigning the judicial districts falls to the Judicial Districts Board.  Tex. Const. art. V, § 7(a); Tex. Gov't Code Ann. § 24.946.  Taken together, these provisions refute the notion that the Governor or the Secretary of State have any connection to the structure of the appellate courts.  Because other state actors are statutorily tasked with reapportioning the judicial districts and those actors are not named here, Governor Abbott and Secretary Nelson are not proper defendants for *Ex parte Young* purposes.  *Lewis*, 28 F.4th at 663.

In an attempt to establish jurisdiction, Plaintiff points to Governor Abbott and Secretary Nelson's general duties to oversee and certify elections (Dkt. #5 at p. 19 n.2).  But these general duties do not provide the requisite connection between Defendants and the challenged provisions.  *Lewis*, 28 F.4th at 664.  Governor Abbott's general duty to certify election results does not make him the enforcer of any of the myriad provisions related to the composition of Texas's appellate courts.  *Cf.  Tex. Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020).  And Secretary

Nelson's role as the state's "chief election officer" fails to make her the enforcer of any of the provisions implicated here. *Cf. Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 674 (5th Cir. 2022). In the end, more is needed—namely, a connection to the enforcement of the particular statutory provision that is the subject of the litigation. *Id.* Plaintiff can point to no such connection here. Accordingly, *Ex parte Young* does not apply and Plaintiffs' constitutional claims are barred by sovereign immunity.

## B.    Plaintiff Lacks Standing to Assert a Claim Under § 2 of the Voting Rights Act

This leaves only Count Four of Plaintiff's complaint, in which Plaintiff asserts a claim for violations of § 2 of the Voting Rights Act (Dkt. #9 ¶¶ 39–40). Defendants contend that subject-matter jurisdiction is also lacking over this claim because Plaintiff has failed to establish that she has standing to bring her Voting Rights Act claim. The Court agrees.

Article III grants to federal courts only jurisdiction to hear actions involving an "actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Accordingly, a plaintiff seeking to invoke the court's jurisdiction bears the burden of establishing "the three familiar elements of standing." *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023). Specifically, a plaintiff must show that she has suffered (1) an injury-in-fact, (2) that is "fairly traceable" to the defendant's actions, and (3) is likely to be dressed by a favorable outcome. *Id.* All three elements are "an indispensable part" of a plaintiff's case. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Section 2 of the Voting Rights Act protects the right to vote by prohibiting voting practices that "result[] in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ." 52 U.S.C. § 10301(a). To have standing to bring a claim under this provision, a plaintiff must be an "aggrieved person"; that is, a voter "attempting to enforce the

prohibition against the infringement of the right to vote on account of race." *Vaughan v. Lewisville Indep. Sch. Dist.*, 475 F. Supp. 3d 589, 594 (E.D. Tex. 2020) (quoting *Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir. 1989)) (cleaned up).  Any person who meets the requirements of constitutional standing is an "aggrieved person" with standing to bring a claim under the Voting Rights Act.  *Id.*

Plaintiff has failed to establish that she is an "aggrieved person" here because she has not pleaded any injury-in-fact that is recognized and legally cognizable under the Voting Rights Act. Because Plaintiff has asserted a claim under § 2 Voting Rights Act, she must allege that her injury is premised on race-based dilution of her vote.  *See id.*  She has not done so.

At the heart of Plaintiff's complaint is her contention that, due to malapportionment, voters in underpopulated districts have a "disproportionate influence on the composition of the overall state judiciary" (Dkt. #9 ¶ 13).  In essence, Plaintiff contends that her right to vote has been abridged because voters in underpopulated counties—like neighboring Hunt County—have an opportunity to vote for a greater number of judicial seats than she does (Dkt. #9 ¶¶ 13–15).  But these allegations are devoid of anything indicating that Plaintiff's ability to vote has been abridged or denied based on her "race or color."  *See* 52 U.S.C. § 10301.

Indeed, Plaintiff has not alleged that her right to vote in judicial elections has been abridged by any "cracking" or "packing" that dilutes the voting strength of white, non-Hispanic voters in the Fifth Judicial District.  *Cf. Harding v. Cnty. of Dallas*, 948 F.3d 302, 307 (5th Cir. 2020).  Nor does she allege that, as a result of her status as a white, non-Hispanic voter, she has less of an opportunity than other members of the electorate to participate in the political process and to elect representatives of [her] choice."  52 U.S.C. § 10301(a)–(b).

At most, Plaintiff has argued that as a white, non-Hispanic Republican voter, she is a minority in the Fifth Judicial District and that she has been unable to elect her preferred candidates to the Fifth District Court of Appeals because the majority of voters in the Fifth Judicial District "preferred their opponents" (Dkt. #19 at pp. 19–20).  But Plaintiff fails to explain how this result stems from race-based vote dilution.  "[A]bsent any evidence of vote dilution or nullification, a citizen is not injured by the simple fact that a candidate for whom she votes loses or stands to lose an election." *Miller v. Hughs*, 471 F. Supp. 3d 768, 776 (W.D. Tex. 2020) (quoting *Jacobson v. Fl. Sec'y of State*, 957 F.3d 1193, 1201 (11th Cir. 2020)).  In the end, "disappointing electoral outcomes" are not an enforceable interest under the Voting Rights Act.  *Vaughan*, 475 F. Supp. 3d at 596.

Plaintiff has mischaracterized Defendants' standing argument as an assertion that white, non-Hispanic voters are not protected from vote dilution under the Voting Rights Act (Dkt. #19 at p. 17).  Defendants have made no such assertion, and the Fifth Circuit has recently made clear that the Voting Rights Act applies with equal force to practices that deny or abridge the rights of white voters.  *Harding*, 948 F.3d at 307.  But, unlike the voters in *Harding*, Plaintiff does not allege that the voting strength of white voters in the Fifth Judicial District has been diluted through "cracking and packing."  *See id*.  Instead, Plaintiff alleges that Texas's system of electing appellate judges affords voters in underpopulated counties a disproportionate influence on the composition of the judiciary (Dkt. #9 ¶ 13).  And, while Plaintiff contends that this system has prevented her preferred candidates from prevailing in past judicial elections, she does not contend that it has caused her vote to weigh less on account of her race.

Thus, because her claims are untethered from the protections of the Voting Rights Act, Plaintiff has failed to carry her burden of establishing an injury-in-fact.  *Vaughan*, 475 F. Supp. 3d

at 595.  As a consequence of this failure, the Court must dismiss Plaintiff's claim for lack of subject-matter jurisdiction.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1), (6) or, Alternatively, Abate (Dkt. #15) is hereby **GRANTED**.

This case is hereby **DISMISSED WITHOUT PREJUDICE**.

The Court will render a Final Judgment consistent with this Memorandum Opinion and Order separately.

All relief not previously granted is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 31st day of August, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

14